IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

——————

LEONARD A. DANEMAN,

     Plaintiff Pro Se,

v.                                No. CIV 99-1038 BB/KBM

TOWER PLAZA, L.L.C.,
and its ASSIGNS & SUCCESSORS,

     Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiff's Motion to Amend Complaint (Doc. 20) and Plaintiff and Defendants' cross Motions for Summary Judgment (Docs. 47 and 59, respectively). Also pending before the Court are Plaintiff's Motion in Limine (relating to production of certain documents and propriety of certain defense testimony) (Doc. 50); Plaintiff's Motion for Court to Enjoin Ohio Casualty Insurance Company as Co-Plaintiff (Doc. 56); Plaintiff's Motion for Sua Sponte Amending of Pretrial Order (Doc. 64); Plaintiff's Motion for Late Filing of Proposed Jury Instructions (Doc. 70); Defendant's two Motions in Limine (Docs. 74 and 76); and Defendant's Motion to Strike Plaintiff's Supplemental Brief and Affidavit (Doc. 79).

The Court hereby GRANTS Plaintiff's Motion to Amend Complaint. The Court has reviewed the parties' submissions and the relevant law, and, for the reasons set forth below, finds

that Defendants' motion for summary judgment should be GRANTED.  Therefore, all remaining outstanding motions are DENIED as moot.

The Court has received, but expressly does not consider, Plaintiff's Motion to Reverse or Retract Order of Consolidation, filed November 17, 2000 (Doc. 82).  Pursuant to Judge Parker's Order to Consolidate issued November 16, 2000, Case No. CIV 00-1372, *Daneman v. Fireman's Fund Insurance Company*, has been consolidated with the above-captioned case.  The Court will address Plaintiff's motion to reconsider in a separate order.

# I.
# BACKGROUND

Plaintiff Leonard Daneman brings this pro se action against his landlord, Defendant Tower Plaza, L.L.C., for Tower Plaza's failure to provide working elevator service to Plaintiff's fifth floor residence and photography studio.  Plaintiff, who has a hernia, alleges that Defendant has discriminated against him on the basis of his disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.  Plaintiff's ADA claims appear to be twofold:  1) that Defendant has discriminated against him in the full and equal enjoyment of a place of public accommodation, see 42 U.S.C. § 12182; and 2) that Defendant has retaliated against him because of his efforts to remedy ADA violations, see 42 U.S.C. § 12203.  In his amended complaint, Plaintiff makes similar claims for discrimination under the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601 et seq.  Plaintiff's amended complaint also alleges numerous state and common law offenses, including violations under the New Mexico Uniform Owner-Resident Relations Act ("UORRA"); violations of the Uniform Building Code;

continuing nuisance; negligence; breach of contract; intentional interference with contractual relations; breach of the implied covenant of habitability; and unfair trade practices under the New Mexico Unfair Practices Act.  Plaintiff and Defendant have filed cross motions for summary judgment.

This case stems from a lengthy history of difficulties between the two parties.  Plaintiff first filed a lawsuit in Bernalillo County Metropolitan Court in November, 1998, regarding the broken elevator in Tower Plaza.  Defendant subsequently filed its own action against Plaintiff for restitution of unpaid rent.  As a result of this litigation, Plaintiff was awarded a one-third rent abatement for each month until the elevator was restored to its full service.  Defendant asserts that all issues relating to the malfunctioning of the elevator were resolved in this metropolitan court litigation, and that further litigation is therefore barred by res judicata and collateral estoppel. Plaintiff argues that the case is not barred because additional facts have transpired that give rise to new causes of action.  The facts relevant to the disposition of this case are set forth below.

Defendant Tower Plaza is the owner and management agency for the Tower Plaza building, a seven-story, mixed commercial and residential building in downtown Albuquerque. Mr. Daneman entered into a five-year lease with Tower Plaza in October, 1997 for rental of a fifth floor apartment unit.  Under the conditions of the lease, Tower Plaza agreed to let Mr. Daneman make substantial renovations to the apartment for use both as a residence and a photography studio.  The evidence demonstrates that Mr. Daneman has spent considerable time and money making these renovations.

In approximately mid-October, 1998, an electrical fire occurred in the elevator in Tower Plaza.  The elevator had been a problem for some time prior to that date.  On October 20, Tower

Plaza sent the building's residents a letter informing them that the elevator would be operational on a limited basis, and that tenants and guests would be required to use the stairs "for the foreseeable future."  At that time, the elevator could be operated by the building manager, who was available only during business hours.

On November 19, 1998, Mr. Daneman filed a motion for emergency injunctive relief in metropolitan court in response to these continuing problems with the elevator.  See Bernalillo County Metropolitan Court Case No. CV-11279-98.  He was represented by an attorney at that time.  On November 24, Mr. Daneman filed a motion in the same case requesting that the court regard the matter as a civil complaint for damages rather than a motion for injunctive relief.

In early December Tower Plaza filed its own action against Mr. Daneman for failure to pay his rent in full.  See Bernalillo County Metropolitan Court Case No. CV-11563-98.  Mr. Daneman responded by asking the court for either injunctive relief or a trial on the issues of restitution and damages.

On December 11, 1998, the metropolitan court heard evidence and argument from both parties in Tower Plaza's action for restitution, Case No. CV-11563-98.  It came to the court's attention during the trial that the issues before the court "cover[ed] substantially the same subject matter" as Mr. Daneman's original action, Case. No. CV-11279-98, and the court entered its judgment with the "knowledge and intention" that its rulings would "likely...preclude the litigation of issues in the other case."  The court made the following relevant findings of fact:  1)  on or about October 13, 1998, the Tower Plaza elevator went out of commission; 2) the elevator had been a problem for some time prior to that date; 3) Tower Plaza had taken steps to fix the elevator, but those steps did not result in a 24-hour-per-day functioning elevator that could be

-4-

accessed by residents at any time; 4)  Tower Plaza was under a legal obligation, under § 47-8-20(A)(4) NMSA 1978, to "maintain in good and safe working order and condition" any elevators in the building; 5) free and unimpeded access to the elevator was a material benefit accruing to Mr. Daneman under his lease, and was compensable if lost; 6) at the time of the judgment, the elevator functioned in all respects, save requiring an attendant to manually operate the door; 7) the apartment manager was only available to operate the door during daytime hours, and then when called to operate the elevator; 8) Mr. Daneman suffered from two hernias, which impeded his ability to move up and down stairs; and 9) Mr. Daneman was entitled to abatement of his rent or to termination of the rental agreement because of Tower Plaza's failure to provide elevator service of a standard required by law and by the lease.  Judgment, CV-11563-98.

The court offered Mr. Daneman a choice of two remedies.  He was entitled to 1) abate his rent by one-third for the month of December, 1998, and "each and every month in which he [was] not provided with on-demand elevator service"; or 2) terminate his lease and be awarded reasonable moving costs.  Mr. Daneman elected to take the first remedy, abatement of one-third of his rent.  The evidence demonstrates that Mr. Daneman has been opposed to moving because of the considerable renovations he has made to his apartment.

Mr. Daneman did not appeal the metropolitan court judgment.  Through his attorney, he filed a motion to dismiss his initial claim for civil damages (Case No. CV-11279-98), on the grounds that "the issues in the instant case [were] adjudicated and decided on their merits on December 11, 1998 by Metropolitan Court case CV-11563-98...."  The court granted Mr. Daneman's motion and dismissed his case.

Subsequently, Mr. Daneman dismissed his attorney and filed a "motion to reconsider" Case. No. CV-11563-98 on December 29, 1998.  He alleged that he had been denied all access to the elevator by Tower Plaza, and requested that the court reconsider injunctive relief.  At this time, it appears that a manual operator was still necessary to operate the elevator.  The court denied Mr. Daneman's motion and stated that the judgment was final.

The precise level of availability of the elevator after December 1998 is unclear from the evidence before the Court.  It is apparent, however, that Tower Plaza was not able to restore the elevator to its full level of operation for several months, and at times the elevator was out of service altogether.  Some time in early 1999, Tower Plaza's building manager moved out, leaving the building without an on-site manager to manually operate the elevator.  In addition, Tower Plaza's elevator repair contract expired and Tower Plaza had difficulty locating a new elevator repair company.  In November 1999, prompted by a letter from Mr. Daneman, the city's Chief Boiler and Elevator Inspector inspected the elevator and notified Tower Plaza of several code violations.  In February 2000, the matter was referred to the city's Legal Department, evidently also by Mr. Daneman.  The Legal Department informed Tower Plaza that it would be subject to criminal prosecution if an elevator repair contractor was not hired within fifteen days.  Through the help of the city, Tower Plaza was able to secure an elevator repair company.  It appears that the elevator has finally been restored to its full operation.

Mr. Daneman has alleged in his amended complaint that, at some point after the metropolitan court judgment was issued, Tower Plaza removed the name of his photography studio from the business directory in the building's lobby as an act of retaliation.  He requested that Tower Plaza restore the listing to the lobby directory, which Tower Plaza failed to do.

Tower Plaza has not offered any evidence to refute Mr. Daneman's claim.  Mr. Daneman has also alleged that, as another act of retaliation, Tower Plaza provided sixth and seventh floor residents with an emergency access key to the elevator that was not provided to Mr. Daneman.

## II.
## DISCUSSION

### A.     Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir. 1999).  A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999).  Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor.  Id.

Because Mr. Daneman brings this action pro se, the Court is required to construe his pleadings liberally.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  However, liberal construction of pro se pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court may not supply additional facts nor construct a legal theory for the

plaintiff that assumes facts that have not been pled.  Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

**B.      Res Judicata and Collateral Estoppel**

Tower Plaza argues that Mr. Daneman's claims are barred by res judicata, or in the alternative, collateral estoppel.  Because the Court finds that the majority of Mr. Daneman's claims are barred by res judicata[1] we do not reach the question of collateral estoppel.

**1.      Res Judicata**

"Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action."  Satsky v. Paramount Communications, Inc., 7 F.3d 1464, 1467 (10th Cir. 1993) (quoting Northern Natural Gas v. Grounds, 931 F.2d 678, 681 (10th Cir.1991)).  Strong public policy concerns support the doctrine of res judicata, including the need to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication."  Id. The need for final resolution of litigated claims even takes precedence over concerns of fairness or justice in specific cases.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401.

Under 28 U.S.C. § 1738, federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged."  Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982).

_____

[1]As discussed below, Mr. Daneman's claims for retaliation under the ADA and FHAA are not barred by res judicata because the alleged facts regarding Tower Plaza's actions occurred subsequent to the date of the metropolitan court judgment.

This Court must therefore look to the law of New Mexico to see if Mr. Daneman's claim is

precluded by the judgment entered in the Bernalillo County Metropolitan Court.

Under New Mexico law, res judicata applies when four elements are met:  1) the parties

are identical or in privity; 2) the parties have the same capacity or character; 3) the cause of action

is the same; and 4) the subject matter is the same.  City of Las Vegas v. Oman, 110 N.M. 425,

432, 796 P.2d 1121, 1128 (N.M. App. 1990).  In addition, "there must have been a final decision

on the merits, and the parties must have had a full and fair opportunity to litigate the issues arising

out of the claim."  Id.  New Mexico, like the Tenth Circuit, has adopted the transactional

approach of the Restatement (Second) of Judgments (1982) in determining what constitutes a

"claim" or "cause of action" for purposes of res judicata.  See Petromanagement Corp. v. Acme-

Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir. 1988); Three Rivers Land Co. v. Maddux,

98 N.M. 690, 695, 652 P.2d 240, 245 (N.M. 1982), overruled on other grounds by Universal Life

Church v. Coxon, 105 N.M. 57, 728 P.2d 467 (N.M. 1986).  Section 24 of the Restatement

provides:

> 1)      When a valid and final judgment extinguishes a plaintiff's claim..., the claim
> extinguished includes all rights of the plaintiff to remedies against the defendant
> with respect to all or any part of the transaction, or series of connected
> transactions, out of which the action arose.
>
> 2)      What factual grouping constitutes a "transaction," and what groupings
> constitute a "series," are to be determined pragmatically, giving weight to such
> considerations as whether the facts are related in time, space, origin, or motivation,
> whether they form a convenient trial unit, and whether their treatment as a unit
> conforms to the parties' expectations or business understanding or usage.

See Three Rivers Land Co., 98 N.M. at 695, 652 P.2d at 245.  The essence of the Restatement

approach "is to see [a] claim in factual terms and to make it coterminous with the transaction

regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff."  Restatement § 24 cmt. a; 98 N.M. at 695, 652 P.2d at 245.  Thus, "where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction."  Restatement § 24 cmt. c; 98 N.M. at 695, 652 P.2d at 245.  All claims or legal theories of recovery arising from a transaction must be asserted in a single lawsuit and will be barred from subsequent litigation.  See Clark v. Haas Group, Inc., 953 F.2d 1235, 1238-39 (10th Cir. 1992); Ford v. New Mexico Dept. of Pub. Safety, 119 N.M. 405, 414, 891 P.2d 546, 555 (N.M. App. 1994).

Mr. Daneman argues that his claims are not barred by res judicata because:  1) he was denied the opportunity to fully and fairly litigate his claim; and 2) the cause of action in the current lawsuit is different from that in the state court lawsuit (i.e., the present suit arises from a different "transaction").[2]  We will address each of these contentions in turn.

### a.    Full and Fair Opportunity to Litigate

First, Mr. Daneman asserts that he was denied a full and fair litigation of his claims due to the unusual timing of the state court proceedings.  Mr. Daneman's original action, CV-11279-98,

---

[2]Additionally, the Court recognizes there is an argument that Mr. Daneman's ADA and FHAA claims survive claim preclusion due to the limited jurisdiction of the metropolitan court.  Claim preclusion applies only to those claims that were or could have been raised in the prior proceeding.  See, e.g., Ford v. New Mexico Dept. of Pub. Safety, 119 N.M. 405, 409-410, 891 P.2d 546, 550-51 (N.M. Ct. App. 1994).  Because the jurisdiction of the metropolitan court is limited to civil claims under $5000, see N.M. Stat. Ann. § 34-8A-3(A), Mr. Daneman could not have raised a claim for damages in an amount over $5000 in that court.  Mr. Daneman has failed to raise this jurisdictional argument, and as a result, the Court will not address it.  Mr. Daneman has also failed to present sufficient evidence that he is entitled to a recovery greater than $5000.  Hypothetically, should Mr. Daneman have a valid claim for over $5000 in damages, the Court believes that Tower Plaza is still entitled to summary judgment based on our alternative holding that Mr. Daneman's hernia is not a disability subject to protection under the ADA or FHAA.

was filed on November 19, 1998 and scheduled for trial approximately six months later.  Tower

Plaza then filed its own action in early December, CV-11563-98, for restitution of unpaid rent.

On December 11, the metropolitan court heard evidence and arguments from both parties on

Tower's Plaza's action, CV-11563-98, recognizing that its rulings were likely to preclude the

litigation of CV-11279-98.  Mr. Daneman argues that, by moving to trial immediately, the

metropolitan court denied him the amount of time for discovery necessary to enable him to fully

litigate his case.

     In determining whether a plaintiff has been denied a full and fair opportunity to litigate his

claims, the Court should examine whether there was a "deficiency that would undermine the

fundamental fairness of the original proceedings."  Petromanagement, 835 F.2d at 1334.  More

specifically, a redetermination of the issues is warranted "if there is a reason to doubt the quality,

extensiveness, or fairness of procedures followed in prior litigation."  Id. (quoting Petro II Kremer

v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982)).  The Court finds no such deficiencies in

this case.  Although the case moved quickly to trial, both parties were given the opportunity to

submit evidence and make arguments.  Judge Kennedy resolved all relevant issues in favor of Mr.

Daneman in finding that the elevator was not functioning on a 24-hour-per-day basis and that

Tower Plaza was under a legal obligation to restore the elevator to its full service.  Had he been

allowed an additional six months for discovery, it is difficult to see what evidence Mr. Daneman

would have introduced other than the simple fact that the elevator was still broken.

     Mr. Daneman cannot assert now that he was denied the opportunity to litigate his claims

because, in retrospect, he is dissatisfied with his judgment.  If he questioned the fairness of his

original trial, his proper recourse was to appeal, which he did not.  Indeed, Mr. Daneman moved

to dismiss his original suit in on the grounds that the issues in that case were "adjudicated and
decided on their merits on December 11, 1998 by Metropolitan Court case CV-11563-98...."  The
Court finds that Mr. Daneman was given a full and fair opportunity to litigate his claim in
metropolitan court.

### b.      Cause of Action

Second, Mr. Daneman argues that the recurring problems with the elevator constitute a
new "transaction" and therefore create new causes of action that entitle him to bring a second
lawsuit.  Applying the approach of the Restatement (Second) of Judgments, we examine whether
the facts underlying Mr. Daneman's metropolitan court lawsuit and the facts underlying his
current claims are so related as to constitute a single cause of action for purposes of res judicata.

All of the state and federal claims that Mr. Daneman brings in the current action, with the
exception of his claim for retaliation based on his disability, arise from his lease with Tower Plaza
and Tower Plaza's failure to provide consistent elevator service to his fifth floor apartment and
photography studio.   This was also the subject matter of the original litigation.  The problems
with the elevator began in October, 1998 with an electrical fire that resulted in the loss of
consistent 24-hour-per-day elevator service.  The facts demonstrate that at no time in the months
following the metropolitan court judgment did the elevator function at a level sufficient to absolve
Tower Plaza of its liability, and Mr. Daneman continued to receive his rent abatement as ordered
in the judgment.  Therefore, we believe that the "transaction" from which this litigation arises is
the initial electrical fire that caused the loss of elevator service.  Mr. Daneman has not offered
evidence of any new facts regarding the broken elevator that establish the existence of a new
transaction.  Tower Plaza's delinquency in repairing the elevator is not sufficient, as he asserts, to

create a new cause of action.[3]  Any additional claims against Tower Plaza arising from the failure

to provide constant elevator service to his residence and/or place of business should properly have

been brought in the original state court action;  Mr. Daneman is not now entitled to the proverbial

"second bite at the apple."

 For the above reasons, the Court finds that each of Mr. Daneman's claims, with the

exception of his claims for retaliation under the ADA and FHAA, arises solely from Tower

Plaza's failure to provide constant, 24-hour-per-day elevator service beginning in October of

1998.  The claims are therefore barred by res judicata and Tower Plaza is entitled to summary

judgment as a matter of law.

 **2.**  **Continuing Nuisance**

 Mr. Daneman also contends that his current action is not barred by res judicata because

the malfunction of Tower Plaza's elevator represents a continuing nuisance.[4]  When an injury

from a nuisance is of a temporary and continuing character, the damages are also regarded as

continuing, and one recovery ordinarily will not be a bar to successive actions for damages

accruing from the same wrong.  See 58 Am. Jur. 2d Nuisances § 275 (1989).  Conversely, when a

---

 [3]As discussed below, when faced with an ongoing problem such as this one, a plaintiff may overcome the hurdle of res judicata by proceeding on a theory of continuing nuisance.  Mr. Daneman excluded this possibility by electing to accept damages over the duration of the nuisance rather than only for that period proceeding the original litigation.

 [4]In his various pleadings, Mr. Daneman has characterized the broken elevator as both a "permanent nuisance" and a "continuing nuisance."  The classification of various nuisances, although sometimes difficult to distinguish, becomes important in the context of both available remedies and the availability of single or successive actions on the nuisance.  See 58 Am. Jur. 2d Nuisances § 26 (1989).  As discussed herein, the Court finds that the malfunctioning elevator is not a permanent nuisance, but one that is temporary and continuing.  It is to Mr. Daneman's advantage to proceed on a theory of continuing nuisance because only this theory allows him the possibility of surviving res judicata.

nuisance is of a permanent character, there may be only one action for damages, and all past,

present and future damages arising from the nuisance must be recovered therein.  See id. at § 274.


New Mexico defines a continuing nuisance as "one which occurs so often that it can fairly

be said to be continuing although it is not constant or unceasing."  Padilla v. Lawrence, 101 N.M.

556, 562, 685 P.2d 964, 970 (N.M. App. 1984).  A permanent nuisance is defined as a nuisance

that is not subject to abatement.  Aguayo v. Village of Chama, 79 N.M. 729, 731, 449 P.2d 331,

333 (N.M. 1969).  We believe the most helpful distinction between those nuisances that are

temporary or continuing and those that are permanent in character is whether the nuisance may be

abated.[5]  Tower Plaza's malfunctioning elevator, although intermittently out of service for almost

two years, could have been serviced by Tower Plaza at any time and therefore cannot be

characterized as a permanent nuisance.  This is confirmed by the fact that the elevator has now

been returned to its full level of operation.  Rather, the recurring problems with the elevator over

a two-year period, although not constant or unceasing, occurred with enough frequency that the

elevator presented a continuing nuisance to Mr. Daneman and the other occupants of Tower

Plaza.  We find that the elevator was a continuing nuisance that, ordinarily, would give Mr.

Daneman the right to bring successive actions without the threat of claim preclusion.

------------------------------------------

[5]While New Mexico has no on point authority, other jurisdictions have adopted a similar
distinction between permanent and continuing nuisances based on whether the nuisance can be
abated.  See, e.g., Nieman v. NLO Inc., 108 F.3d 1546, 1559 (6th Cir. 1996) (citing Brown v.
Scioto Cty. Bd. of Comm'rs, 622 N.E.2d 1153 (Ohio App. 1993) (recognizing distinction under
Ohio law)); Arcade Water Dist. v. United States, 940 F.2d 1265, 1268 (9th Cir. 1991) (quoting
Mangini v. Aerojet-General Corp., 281 Cal.Rptr. 827, 840 (Cal. Ct. App. 1991) ("[T]he crucial
distinction between a permanent and continuing nuisance is whether the nuisance may be
discontinued or abated")).

Had the metropolitan court awarded Mr. Daneman only those damages suffered by him through the filing of his original lawsuit, he would be entitled to bring a successive action for damages suffered since that time.  In standard actions for continuing nuisance, a plaintiff's recovery is limited to the actual injury suffered prior to the commencement of each action.  See Baker v. Burbank-Glendale-Pasadena Airport Auth., 39 Cal.3d 862, 869, 705 P.2d 866, 870 (Cal. 1985); 59 Am. Jur. 2d Nuisances § 275 (1989).  In each successive action the plaintiff may recover damages sustained after the most recent action was filed, and may continue to bring successive actions for damages until the nuisance is abated.  See Pate v. City of Martin, 614 S.W.2d 46, 48 (Tenn. 1981); Restatement (Second) of Judgments § 26(1)(e) (1982).

Mr. Daneman, however, elected to take a one-third rent abatement for each month he was not provided with on-demand elevator service.  By actively choosing and accepting an award of damages each month Mr. Daneman precluded the option of bringing successive lawsuits on a theory of continuing nuisance.  See Kentucky West Virginia Gas Co. v. Lafferty, 174 F.2d 848 (6th Cir. 1949) (party seeking future damages deemed to have elected to recover in one action); Spaulding v. Cameron, 239 P.2d 625 (Cal. 1952) (plaintiff cannot seek both future damages and injunction to abate nuisance).  See generally 1 Fowler Harper et. al., The Law of Torts, § 1.30 (3rd ed. 1996).  The Court is not without sympathy for Mr. Daneman; the evidence demonstrates that he believed the elevator would be restored to full function within a period of a few months, which it was not.  Nonetheless, a plaintiff may not survive the application of claim preclusion simply because he is dissatisfied with his amount of recovery.  See Restatement (Second) of Judgments § 25, cmt. c (1982):

> Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of the judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury.  Accordingly, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded.

This rule also achieves a just result in the present circumstances.  Mr. Daneman was given the option to break his lease by the metropolitan court, which he declined.  He has also refused multiple offers by Tower Plaza to move into an apartment on the first floor.  By electing the award of monthly rent abatement, Mr. Daneman subjected himself to the possibility that he would have to live with the broken elevator for quite some time, but was compensated for each month this nuisance continued.  It is evident that the court believed the one-third rent abatement to be appropriate compensation for Mr. Daneman's loss of elevator service and Mr. Daneman chose to accept this remedy.  It is not the function of this Court to now reevaluate the adequacy of the damage award.   For these reasons, the Court finds that Mr. Daneman may not bring his action under a theory of continuing nuisance.

## C.    Discrimination Under the ADA and FHAA

Mr. Daneman alleges in his initial complaint that Tower Plaza has both discriminated against him and retaliated against him in violation of Title III of the Americans with Disabilities Act ("ADA").[6]  In his amended complaint, he makes similar allegations under the Fair Housing

---

[6]Mr. Daneman brings his claims under Title III of the ADA, which prohibits discrimination in the enjoyment of public accommodations.  Specifically, 42 U.S.C. § 12182(a) provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."   We assume but do not decide for purposes of this opinion that Tower Plaza, a mixed commercial and residential building, is a place of public accommodation subject to the

Amendments Act of 1988 ("FHAA").  As discussed above, Mr. Daneman's ADA and FHAA

discrimination claims are barred by res judicata.  In the alternative, the Court holds that Tower

Plaza is also entitled to summary judgment on Mr. Daneman's ADA and FHAA claims because

his hernia is not, as Mr. Daneman contends, a "disability" or "handicap" that entitles him to the

protection of either statute.

A "handicap" under the FHAA and "disability" under the ADA are identically defined as:

1) a physical or mental impairment which substantially limits one or more of such person's major

life activities; 2) a record of having such an impairment; or 3) being regarded as having such an

impairment.  42 U.S.C. § 3602(h); 42 U.S.C. § 12102(2).  Because the analysis under both

statutes is the same,[7] we analyze them simultaneously.  Mr. Daneman argues that the lack of

elevator service limits his ability to work, a major life activity, because his hernia makes him

unable to carry his heavy photographic equipment up and down the stairs.  There is no question

provisions of Title III of the ADA.

[7]The definition of a "handicap" under the FHAA is drawn almost verbatim from the
definition of a "handicapped individual" under section 504 of the Rehabilitation Act of 1973, 29
U.S.C. § 794.  In enacting the anti-discrimination provisions of the FHAA Congress intended the
definition of a handicap to be consistent with the definitions, standards and cases developed under
the Rehabilitation Act.  See, e.g., Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2nd Cir. 1995);
Justice v. Pendleton Place Apts., 40 F.3c 139, 143 (6th Cir. 1994).  Similarly, the ADA's
definition of a "disability," 42 U.S.C. § 12102(2), is the same as that for a "handicap" under both
the FHAA and the Rehabilitation Act.  The Supreme Court has held that the term "disability"
under the ADA is to be construed consistently with the term "handicap" under the Rehabilitation
Act and the FHAA.  Bragdon v. Abbott, 524 U.S. 624, 631.  Indeed, the ADA explicitly states
that "except as otherwise provided in [the ADA], nothing in [the ADA] shall be construed to
apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973
(29 U.S.C. § 790 et. seq.) or the regulations issued by Federal agencies pursuant to such title."
42 U.S.C. § 12201(a); 524 U.S. at 631-32.  Courts must construe the ADA to grant at least as
much protection as provided by the Rehabilitation Act.  524 U.S. at 632.  Therefore, any case law
interpreting the meaning of a disability under the ADA is equally applicable to the determination
of a handicap under the FHAA.

that working is considered a major life activity.  Under the regulations applicable to both acts,[8] a

"major life activity" is defined as "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i);

Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994).  In determining whether Mr.

Daneman's hernia "substantially limits" his right to work, three factors should be considered:  "1)

the nature and severity of the impairment; 2) the duration or expected duration of the impairment;

and 3) the permanent or long term impact, or the expected permanent or long term impact of or

resulting from the impairment."  29 C.F.R. § 1630.2(j)(2); Bolton, 36 F.3d at 943.  The

regulations are clear that "temporary, non-chronic impairments of short duration, with little or no

long term or permanent impact" are not usually disabilities or handicaps.  29 C.F.R. pt. 1630 app.;

McDonald v. Commonwealth of Pennsylvania, Dept. of Pub. Welfare, Polk Cnt., 62 F.3d 92, 95

(3rd Cir. 1995).

     The courts have not addressed the issue of whether a hernia qualifies as a "handicap"

entitling a person to protection under the FHAA.  However, several courts have examined a

hernia impairment in the context of the ADA.  Every court which has addressed this issue has

determined that a hernia does not qualify as a disability protected by the ADA.  See Sarno v.

Douglas Elliman-Gibbons & Ives, Inc., 17 F. Supp. 2d 271, 273-74 (S.D.N.Y. 1998); Green v.

Rosemont Indus., Inc., 5 F. Supp. 2d 568, 572-73 (S.D. Ohio 1998); Gonzalez v. Perfect Carton

Corp., 1996 WL 84058, *6 (N.D. Ill., Feb. 28, 1996) (a hernia "falls squarely within the category

of 'temporary, non-chronic impairments of short duration' that the EEOC has deemed beyond the

_____

          [8]The regulations applicable to the FHAA and ADA are those promulgated under the
Rehabilitation Act of 1973.  See n.6, supra.

coverage of the ADA"); see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)

(suggesting, but not deciding, that a hernia is not a disability protected under the ADA).  The law

is therefore clear that a hernia is not a disability.  Moreover, the evidence before the Court shows

that, although Mr. Daneman has elected not to have surgery, his hernias could be successfully

treated through surgery.  Mr. Daneman argues that Tower Plaza, by failing to provide elevator

service, has exacerbated his condition; he also argues that his doctor's warning that he should

refrain from lifting heavy objects demonstrates that his hernia is not "temporary."  Mr. Daneman's

hernia is not a "temporary, non-chronic impairment of short duration."  If his hernia has persisted,

it is because he has chosen not to avail himself of surgery, the common remedy for a hernia.  Mr.

Daneman cannot transform a temporary injury into one that is chronic and protected under law by

failing to seek appropriate treatment.  The Court holds that Mr. Daneman's hernia is neither a

disability protected by the ADA nor a handicap protected by the FHAA.  As a result, Tower Plaza

is entitled to summary judgment as a matter of law on Mr. Daneman's claims for discrimination.

**D.     Retaliation Under the ADA and FHAA**

As discussed above, Mr. Daneman's claims for discrimination under both the ADA and the

FHAA are based on the lack of elevator service in Tower Plaza and are therefore barred by res

judicata.  His claims for retaliation, however, are based on facts that allegedly occurred after the

issuance of the metropolitan court judgment.  Claim preclusion does not apply to new facts which,

in and of themselves, establish an independent cause of action against a defendant:  a previous

judgment "cannot be given the effect of extinguishing claims which did not even then exist and

which could not possibly have been sued upon in the previous case."  Lawlor v. National Screen

Service Corp., 349 U.S. 322, 328 (1955); Phelps v. Hamilton, 122 F.3d 1309, 1321 (10th Cir.

1997); accord Anaya v. City of Albuquerque, 122 N.M. 326, 330, 924 P.2d 735, 739 (N.M. App. 1996). Mr. Daneman's claims for discrimination are also barred because his hernia is not a disability for which he is protected under the ADA and FHAA. However, as the Court discusses below, Mr. Daneman need not establish that he is disabled in order to bring his retaliation claims.

In his various pleadings Mr. Daneman alleges that, some time in late December of 1998, Tower Plaza removed the name of his photography studio from the business directory in the building lobby. He also asserts that Tower Plaza provided keys to seventh floor residents that allowed them to activate the elevator, but that Tower Plaza refused to provide him with a similar key.

### 1.      Americans with Disabilities Act

The ADA retaliation provision, section 503(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Mr. Daneman asserts that Tower Plaza retaliated against him in violation of the ADA for bringing his lawsuits and undertaking other efforts to restore elevator service.

Tower Plaza argues that Mr. Daneman is not entitled to relief on any claim under the ADA because his hernia does not qualify as a disability subject to the protection of the Act. As discussed, Mr. Daneman's claim for discrimination under the ADA fails as a matter of law because he is not a disabled person. However, Mr. Daneman's disabled status does not affect his claim for retaliation. "Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a qualified individual with a disability." Krouse v.

American Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997); see Robbins v. Jefferson County Sch.

Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999), Love v. Re/Max of Am., Inc., 738 F.2d 383,

385 (10th Cir. 1984) (Title VII cases rejecting the notion that the validity of a retaliation claim is

contingent upon the validity of the underlying substantive claim).  To establish a prima facie case

of retaliation under the ADA a plaintiff must demonstrate only that:  1) he engaged in a protected

action under the ADA; 2) either after or contemporaneous with that action, the defendant took

adverse action against him; and 3) there is a causal connection between the plaintiff's protected

action and the defendant's adverse action.  Morgan v. Hilti, 108 F.3d 1319, 1324 (10th Cir.

1997).

        Nevertheless, the Court does not reach the validity of Mr. Daneman's claim for retaliation

because we agree with Tower Plaza that he is not entitled to damages under Title III of the ADA.

Mr. Daneman brings this claim under Title III, which prohibits discrimination against disabled

persons in the enjoyment of public accommodations.  See 42 U.S.C. §§ 12181 - 12189.  Title I,

which prohibits discrimination in employment, and Title II, which prohibits discrimination in

public services furnished by governmental entities, provide for both legal and equitable relief.  See

42 U.S.C. §§ 12117, 12133.  Unlike these titles, however, damages are not available to a private

plaintiff under Title III.

        The remedies available to a plaintiff under the ADA retaliation provision are the same

remedies available for the ADA title that underlies the plaintiff's original claim:  in this case, Title

III.  See 42 U.S.C. § 12203; Ostrach v. Regents of the Univ. of California, 957 F.Supp 196, 201

n.10 (E.D. Cal. 1997).  The remedies provision of Title III, 42 U.S.C. § 12188, states in relevant

part:  "The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies

and procedures this subchapter provides to any person who is being subjected to discrimination

on the basis of disability in violation of this subchapter."   We are therefore directed to 42 U.S.C. §

2000a-3(a), which provides:

> Whenever any person has engaged or there are reasonable grounds to believe that
> any person is about to engage in any act or practice prohibited by [the title in
> question], a civil action for preventive relief, including an application for a
> permanent or temporary injunction, restraining order, or other order, may be
> instituted by the person aggrieved.

Section 2000a-3(a), and therefore Title III of the ADA, provides only for the remedy of injunctive

relief.[9]  See Tatum v. National Collegiate Athletic Ass'n, 992 F. Supp. 1114, 1122 (E.D. Mo.

1998) ("[T]he only type of enforcement that Congress has made available to a private plaintiff [in

Title III actions]...is specifically limited to the remedies and procedures prescribed in 42 U.S.C. §

2000a-3.  And in turn that statute...is specifically limited to providing injunctive relief and not

damages"); A.R. v. Kogan, 964 F. Supp. 269, 271 (N.D. Ill. 1997).  The only remedy currently

sought by Mr. Daneman is damages, which are not available to him under Title III.  Notably, the

remedy of injunctive relief is now a moot issue as the evidence shows that the elevator has been

restored to its full level of operation.  The Court finds that Tower Plaza is entitled to summary

judgment as a matter of law on Mr. Daneman's claim for retaliation under the ADA.

---

[9]Mr. Daneman refers us to a portion of the enforcement provision of Title III in support of
his position that he is entitled to damages:  "In a civil action under paragraph (1)(B), the court
may, to vindicate the public interest, assess a civil penalty against the entity in an amount (i) not
exceeding $50,000 for the first violation; and (ii) not exceeding $100,000 for any subsequent
violation."  42 U.S.C. § 12188(2)(C).  However, this provision refers only to actions brought by
the Attorney General under section 12188(1)(B).  As discussed above, the only remedy available
to a private plaintiff is injunctive relief.

2.        **Fair Housing Amendments Act**

Mr. Daneman also claims in his amended complaint that Tower Plaza has retaliated against

him in violation of the FHAA.[10]  Although Tower Plaza argues that Mr. Daneman is not subject to

the protections of the FHAA because his hernia does not qualify as a "handicap," it has not

specifically addressed the FHAA retaliation claim in its motion for summary judgment.  Because

this is the only issue remaining the Court addresses it sua sponte.

The retaliation provision of the FHAA, 42 U.S.C. § 3617, states:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in
the exercise or enjoyment of, or on account of his having exercised or enjoyed, or
on account of his having aided or encouraged any other person in the exercise or
enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606
of this title.

The first issue presented in this case is whether Mr. Daneman must show that he is a member of a

class protected by the FHAA--here, a handicapped person-- in order to successfully bring a

retaliation claim under section 3617.  As discussed above, it is established that under the ADA, a

plaintiff need not be a "qualified individual with a disability" in order to bring a retaliation claim.

See Krouse, 126 F.3d at 502.  However, few courts have considered this issue in the context of

_____

[10]Mr. Daneman does not specify anywhere in his pleadings the section of the FHAA on
which his underlying claim for discrimination is based.  Because we interpret Mr. Daneman's
pleadings liberally, we assume that he is claiming a violation of his rights under 42 U.S.C. §
3604(f)(2), which states in relevant part:  "It shall be unlawful [t]o discriminate against any person
in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services
or facilities in connection with such dwelling, because of a handicap of...that person."  Mr.
Daneman's claim appears to be that Tower Plaza has discriminated against him in disregard of his
hernia by failing to provide consistent elevator service.

the FHAA, most likely because plaintiffs' status as a member of a class protected by the FHAA is so rarely in question.[11]

Those courts that have indirectly addressed this issue suggest that a plaintiff must be a member of a protected class.  The Second Circuit has stated that section 3617 protects two distinct groups of individuals:  "[f]irst, it safeguards *members of the protected class* from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights...[and] [s]econd, it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act Rights."  Frazier v. Rominger, 27 F.3d 828, 833 (2d Cir. 1994) (emphasis added). In People Helpers, Inc. v. City of Richmond, 789 F. Supp. 725 (E.D. Va. 1992), the court established that in order to prevail on a claim under section 3617, the plaintiff must show:  1) *he is a protected individual, or is exercising the rights of a protected individual, under the FHAA*; 2) he was engaged in the exercise or enjoyment of his fair housing rights, or was aiding or encouraging others in the exercise of their fair housing rights; 3) the defendant's actions were motivated by discriminatory intent or had a discriminatory impact; and 4) the defendant coerced, threatened, intimidated, or interfered with the plaintiff on account of his protected activity under the FHAA.  Id. at 732 (emphasis added); see also Grubbs v. Housing Authority of Joliet, 1997 WL 281297, *25 (N.D. Ill. 1997) (citing People Helpers).  Mr. Daneman has provided a contrary

---

[11]While the ADA is designed only to prohibit discrimination against persons with disabilities, the FHAA is a broad civil rights statute that prohibits discriminatory housing practices based on race, color, religion, sex, handicap, familial status, or national origin.  See 42 U.S.C. § 3604.

proposition, to wit:  that a plaintiff need *not* be a member of a protected class, or exercising the

rights of members of a protected class, in order to bring a retaliation claim.

The Department of Housing and Urban Development (HUD) has published regulations

interpreting section 3617 that suggest, contrary to the limited case law, that a plaintiff need not be

a member of protected class.  When faced with a problem of statutory construction, the Court

shows great deference to the interpretation given the statute by the agency charged with its

administration.  Udall v. Tallman, 380 U.S. 1, 16 (1965); Housing Auth. of Kaw Tribe of Indians

of Oklahoma v. City of Ponca City, 952 F.2d 1183, 1195 (10th Cir. 1991).  The regulations

promulgated pursuant to section 3617 state:

> Conduct made unlawful under this section includes but is not limited to, the
> following:  (1) Coercing a person, either orally, in writing, or by other means, to
> deny or limit the benefits provided that person in connection with the sale or rental
> of a dwelling or in connection with a residential real estate-related transaction
> because of race, color, religion, sex, handicap, familial status, or national origin.
> (2)  Threatening, intimidating or interfering with persons in their enjoyment of a
> dwelling because of the race, color, religion, sex, handicap, familial status, or
> national origin of such persons, or of visitors or associates of such persons....(4)
> Intimidating or threatening any person because that person is engaging in activities
> designed to make other persons aware of, or encouraging such other persons to
> exercise, rights granted or protected by this part.  (5) *Retaliating against any*
> *person because that person has made a complaint, testified, assisted, or*
> *participated in any manner in a proceeding under the Fair Housing Act.*

24 C.F.R. § 100.400 (emphasis added); see also Texas v. Crest Asset Management, Inc., 85

F.Supp.2d 722, n.3 (S.D. Tex. 2000); Cass v. American Properties, Inc., 1995 WL 132166, *6

(N.D. Ill. 1979, Feb. 27, 1995) (citing regulations).  Section (5), prohibiting retaliation "against

any person because that person has made a complaint...under the Fair Housing Act," is

reminiscent of the retaliation provision of the ADA.  Although the Court is not convinced that the

HUD regulations represent the best statutory construction of section 3617, the Court is required

to show deference to the agency's interpretation.  Therefore, Mr. Daneman is not required to demonstrate that he is a member of a protected class in order to bring a retaliation claim under the FHAA.  He must show only that he made a complaint under the FHAA and that Tower Plaza retaliated against him because of that complaint.

Nevertheless, Mr. Daneman has not met this burden.  His primary claim for retaliation centers on Tower Plaza's removal of his business name from the directory in the building's lobby. This event evidently occurred some time during December, 1998.  Mr. Daneman did not file this lawsuit until September, 1999, and specifically did not make his claims under the FHAA until the filing of his amended complaint in February, 2000.  In order to bring a successful claim for retaliation, Mr. Daneman must show that Tower Plaza's retaliatory actions were taken as a result of his filing a lawsuit under the FHAA.  See Morgan v. Hilti, 108 F.3d 1319, 1324 (10th Cir. 1997).  Because Tower Plaza's alleged retaliatory action occurred prior to the filing of Mr. Daneman's FHAA claims, it is not possible that this action was taken in retaliation for Mr. Daneman's lawsuit.

Mr. Daneman also cites other alleged acts of retaliation by Tower Plaza throughout his amended complaint.  Specifically, he alleges that Tower Plaza provided residents on the seventh floor with an emergency key that allowed them to operate the elevator, but that Tower Plaza would not provide him with a similar key.  He also asserts that his requests to repair the elevator resulted in "threats and thinly veiled eviction attempts" by Tower Plaza.  Because Mr. Daneman has not alleged on what dates these incidents took place, the Court cannot ascertain whether they occurred before or after Mr. Daneman filed his FHAA claims.  Obviously then, Mr. Daneman has not submitted any evidence regarding these alleged incidents sufficient to create a genuine issue of

-26-

material fact.[12]  The Court has before it only the conclusory allegations set forth in Mr.

Daneman's pleadings.  Although we construe Mr. Daneman's pleadings liberally because he is pro

se, he is still required to comply with the Federal Rules of Civil Procedure.  <u>Tucker v. Maschner</u>,

21 F.2d 1122, 1994 WL 123241 **1 (10th Cir., April 11, 1994).  In a summary judgment

situation, "the nonmovant must do more than refer to allegations...in a brief to withstand summary

judgment.  Rather, sufficient evidence (pertinent to the material issue) must be identified by

reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."  <u>Id</u>.

(quoting <u>Thomas v. Wichita Coca Cola Bottling Co.</u>, 968 F.2d 1022, 1024 (10th Cir. 1992)).

The Court finds that Mr. Daneman's claims for retaliation under the FHAA do not present a

genuine issue of material fact for trial.  Tower Plaza is entitled to summary judgment as a matter

of law.


### III.
### CONCLUSION

For the reasons set forth above, the Court finds that:  1)  Mr. Daneman's claims for

discrimination under the ADA and FHAA, as well as his state law claims, are barred by res

judicata; 2) by electing a remedy of monthly rent abatement in his original lawsuit, Mr. Daneman

precluded the option of bringing this suit under a theory of continuing nuisance; 3) in the

alternative, Mr. Daneman's claims for discrimination under the ADA and FHAA fail because his

hernia is not a disability subject to the protection of either act; 4) damages, the remedy sought by

---

[12]Mr. Daneman asserts in his amended complaint that he has submitted electronic
recordings of dates and times of the usage of the Tower Plaza elevator to show the elevator usage
by seventh floor residents.  The Court has not been able to locate these recordings in the
evidence.

Mr. Daneman, are unavailable under Title III of the ADA; 5) although Mr. Daneman need not

show that he is a member of a protected class to bring a claim for retaliation under the FHAA, he

has failed to raise any issue of material fact sufficient to survive summary judgment on this claim.

Tower Plaza is entitled to summary judgment as a matter of law on all counts.  An order in

conjunction with this memorandum opinion will issue.


Dated at Albuquerque this 22nd day of November, 2000.



_____
BRUCE BLACK
United States District Judge